Benjamin Osorio is here for the petitioner. Diaz-Arellano. Allison Frayer is here for the government. Mr. Osorio, you may begin your argument. Good morning, your honors, and may it please the court. My name is Ben Osorio on behalf of Mr. Hector Diaz-Arellano. First, if I may, I'd like to make the court's job a little bit easier. I think the continuance issue is moot at this point, so I believe the court only needs to take up the 1229B issue and whether that language is ambiguous or not, and at what time the child must be under the age of I-94, he was never able to confirm, and a FOIA has confirmed that there's no evidence of that, your honor, so there would be no ability to adjust using that. Are you no longer relying on that issue? That's correct, your honor. I just think it's it's not a good use of this court's time, given that he wouldn't be able to to adjust anyway, even if the court were to remand based off of that. I appreciate that, thank you. Your honors, if you look at the timeline here, the NTA, the notice to appear, was issued in this case on August 20th of 2017. Mr. Diaz then receives a bond on October 24th, 2017, which will become relevant for other reasons. Then at the master hearing on February 13th of 2018, and this is at page 65 and 66 of the record, your honor, the IJ specifically notes that the child is going to age out in September of the next year, so the IJ, she then says, okay, I'm gonna bring Mr. Diaz back quickly for another hearing so that he can file that application in May. That is on a page 71, your honor. Then that IJ only offers dates that are well outside when that child would turn 21, so my position is that... Did your client point that out at that time? From my view of the record, counsel accepted one of those dates past the daughter's birthday. I agree with that statement, your honor. I would point out that EOIR was already on notice and they are the ones who have unilateral control over their scheduling, and that the IJ herself, given that was already on the record, and if you look at pages 58 and 68, your honor, you can tell that it remains the same IJ for both hearings. I would argue that given that the IJ was already on notice, why would it make sense to then set a hearing for an application that the... But she's supposed to remember the daughter's birthday? I mean, I think that puts a lot on an IJ who's dealing with, we know, more cases than they should need to handle, and that's a lot to ask the IJ to remember the daughter's birthday and make sure that the hearing is scheduled beforehand, and then rather than rely on the petitioner to point out that that hearing date would not be useful. I agree with the second part of your honor's statement about the system having significant backlog and the IJs being overworked. What I would disagree is that application at that initial hearing had not been filed yet, and so the court at that point, the IJ had its file in front of it with that application right there. In that application, the 42B, your honor, and I believe this is on like pages 90 through 99 of the record, the applicants qualifying relatives and their dates of birth are listed in that application. So I would say that the court is on notice, or the IJ in this instance is on notice, and given that they have no lateral control over that, it was improper for them to set a date for an application that they... But if you have counsel saying that's fine, I mean, the whole point of making an objection is to tell the immigration judge or the trial judge that that's a problem, judge. I understand that that's a date, but that date is going to get us past the date that the daughter is going to age out. So can you please squeeze this in earlier? I mean, you have to make some kind of objection to make it clear that that's an issue. I agree, your honor, that there could have been some better lawyering here at the lower levels here, and that they could have been more aggressive. I guess if the IJ's previous statement acknowledging that the child was going to age out and quickly resetting the hearing had not occurred, I would not be making the same arguments. But I think given that EYR was already on notice, they then had an obligation to set the hearing when the application could actually be And to me, it makes no sense to set an application when it's clear that the applicant isn't going to be even eligible at that time. So assuming that that's true, then, I think your strongest argument is that there's an implied exception to the age at adjudication rule if there was undue or unfair delay? I believe that's what Isidro Zamorano says, your honor, and I take a firm position that if it's not jurisdictional, I think most things are subject to equitable tolling. If you look at how this court and the Supreme Court treats motions to reopen, they're subject to equitable tolling here. I think there could be equitable tolling in this instance. Especially given how EYR, as sort of their process, they do these applications. I think if you look at the Tenth Circuit's most recent decision in Ron Helm Fuentes, I think it's pretty instructive. That petitioner had been set aside for a grant, and then two years later, when it was actually eligible for a grant, it was no longer available, the child had aged out. But if, in this case, if Mr. Diaz had never bonded out, if he had never bonded out, given EYR's own policy, he would have jumped the line. And that's why I think the arbitrariness and capriciousness of the way that they're applying this comes. Yeah, so why was there unfair delay in the immigration proceedings? Or how was there unfair delay in the immigration proceedings? That's probably your strongest argument, that there was undue or unfair delay in the immigration proceedings, and so that's an exception to the age at adjudication rule, right? I would argue it sort of operates like CISPA, your honor, the Child Status Protection Act, that there should be sort of age freezing. I mean, I think, going further, I think there should be an age freezing that operates, given the visa waitlist, given the board's processing times for appeals. Doesn't that misunderstand the purpose of this rule, which is, if you have a small child, or any child, right, who will have a problem if their parent is removed, once that child is an adult, that problem no longer exists. So the reason for that piece of the rules goes away. Why isn't that the case? Why isn't that clear? I guess, I would take two issues with that. One, your honor, I think if I have a child with autism, or Down syndrome, or some serious medical issues, those don't necessarily go away just because they turn 21. That would be, that's a different rule, right? I mean, this rule, as I understand it, is just age-based. Is there some other aspect that... No, it is age-based, your honor, but I'm going to continue. So if freezing the time of the application, or freezing at the time of adjudication before the IJ, I would argue that that still preserves Congress purposes. But why? Okay, go ahead. It's just, I'm having trouble with that because the statute is very clear that child is defined as unmarried person under the ages, under 21 years of age. So even if you had a child who had Down syndrome, and now they were 21 years old, that would not prohibit the Attorney General from removing the individual. So I guess that... Even with, even with hardship. I guess that depends when the court believes that establishes, and I think that's where the fight has been over the circuits, because it seems to differ in verb tense. Is it establishes at the point that the IJ hears it? Is it establishes at the point the order becomes administrative? Right, but then, but the question is here, I mean, if we're, if we give Chevron deference, and you could talk about that now, which is, is this permissible construction of the statute by the BIA, which is that it's a, an application for relief for removal is a continuing application, and that the qualifying relative has to meet the qualifications at the time of adjudication. And obviously that goes both ways, because there's a case where it could be beneficial to the person seeking relief from removal. In this case, it's not beneficial to your client. But if you, let's say that your qualifying relative is a spouse, or you're qualifying relative as a parent, but at the time of adjudication you're now divorced, well then there's no qualifying relative anymore. The spouse is no longer in the picture, or if the parent has passed away at the time of adjudication, there can't possibly be an unusual hardship, because the qualifying relative is no longer, is no longer permissible under the statute. So I mean, it's, it's sort of harsh, because it can, in some situations, if you apply, and then you have a child, or you become married, then you can use that statute. But in this case, it goes the other way, and it goes contrary to your client. I mean, why is this not a permissible construction of the statute by, by the BIA? Well, again, I point back to the way that the BIA actually operates this, and so given, you know, some people are allowed to jump in lines, that's to me where the arbitrariness and capriciousness of this comes. Like, why are we treating some detained individuals different than we're treating non-detained individuals? So I would say the BIA's actual application is arbitrary and capricious. I would say, though, that again, turning to your first point about when that qualifying relative has to be alive, or be under a certain age, or be in a position, that again, this is where that VERB usage establishes that removal. So is that established by the filing of the application? Is that established by the IJ, who's the only permissible fact-finder in this case, hearing the evidence? Or is that established after a BIA appeal, if DHS, you know, appeals the IJ's grant of cancellation in this case, and it becomes administratively final? Those are very different time periods, and could span 10 years at this point. So, so that's, again, that's sort of where our, our argument about the IJ, or is that once it becomes administratively final, Your Honor? And I reserve the rest of my time. Mr. Rosario, you've reserved some time for rebuttal. We'll hear from Ms. Freyer on behalf of the Attorney General. Good morning, Your Honors, and may it please the Court, Alison Freyer for the Attorney General. In light of Petitioner's concession that he does not continue to challenge the continuance denial to seek adjustment of With respect to the cancellation of removal application, the Board's construction of the statute requiring that the qualifying relative exist at the time of adjudication is either compelled by the plain language of the statute, or a reasonable interpretation of the statute. This Court... The statute doesn't, doesn't discuss, or, I mean, when you read it, there clearly is no interpretation that we can say when do you adjudicate, or when does the, the establishes, what's the time period. So, I mean, I'm not sure that I could read the statute any other way, other than what the BIA's interpretation is. The, I think that's absolutely correct. This Court pointed out in the unpublished decision of Balthazar Felipe that the hardship must exist to the relative at the time of removal, which is necessarily after the adjudication, and so the qualifying relative needs to exist at that point for the hardship to exist at that point. Petitioner has offered absolutely no statutory or textual support for his claim that there may be some time other than adjudication at which we would freeze the age and existence, or, and presumably generalized status of the qualifying relatives. It, as Your Honor pointed out, it can have harsh effects as it did here, but it can also be helpful to the applicants if they acquire new qualifying relatives, or if their relatives acquired a new status that renders them qualifying, or if the qualifying relatives suffer illness, accident, disease, something like that. It makes the most sense for the IJ to be able to look at reality as it exists when he's adjudicating the application rather than pretending that things are true that we know are not true at that point. I was going to follow up on that by saying why would it make any sense for this statute to prioritize someone who would have had a hardship five years ago but does not have a hardship now over someone who has a hardship now? That just doesn't seem to me to be a logical way to read the statute. I would agree. I think focusing on current reality makes the most, makes the most sense, and Petitioner's argument about detention status was raised in a 28-J, was not in the briefing, and therefore has been waived, and in any event, detained cases move faster because those people are in detention. They are detained at taxpayer expense. It is obviously more disruptive to their lives as well, so all parties have an interest in moving those as quickly as we can consistent with due process, so that's hardly arbitrary. Well, there was a two-year delay between his application and his individual hearing. Why isn't that undue or unfair delay? I mean, if you had an earlier hearing, then maybe the Attorney General would have had discretion to adjust his status if he had an earlier hearing. It's possible, although the Petitioner has never explained what hardship his 20-year-old daughter would have suffered even though he filed his application and his evidentiary materials to support that, that packet does not contain any evidence about his daughter's health or But even assuming that he had some evidence out there that he did not submit that would have met the extremely high standard for hardship, not all of that delay is attributable to the IJ. At the master calendar hearing in February of 2008, the IJ asked if the case was ready to be set for an individual hearing, and the noncitizen's attorney said, no, I need another master calendar. I'm not ready to go forward. I need more time. The IJ granted that continuance and gave the noncitizen more time to put the case together, but that was a request that the noncitizen made, even though, of course, the noncitizen should be more aware of his child's birthday than the IJ. So overall, by the time the cancellation of removal application was filed, there was only five months until the relevant birthday, and these things just take time, but five months is hardly unreasonable or even unusual. If this court has no more questions, then the petition for review should be denied. Thank you, Ms. Brayer. Mr. Osorio, you reserve some time for rebuttal. Don't you need some evidence of hardship? Your Honor, given that that is a factual question and that no testimony was taken on that, I think if this court wanted to, it would need to remand so that that full individual hearing and testimony from the witnesses could be taken on that issue. Just quickly, I would say to Judge Grant's question about what would happen if we don't freeze the age, and I understand the question is looking at the hardship at the time. So again, is that at the time before the IJ? Because what we're going to run into soon is basically a statute where people only with children under ten years old can qualify, because right now, Board of Immigration non-detained appeals are taking four or five years, and the visa processing for that 4,000 cap is already at four to five years right now. So basically, if I apply today, I must establish hardship to my children who are under 11 years old, which is not the point of the statute. Congress clearly delineated who was a child. And so by creeping that age significantly lower and lower and lower with time because the backlog is just increasing, and by allowing certain What you would have to do is show how many years later, because of the influx of cases, that you have a child at that point for whom it would cause a hardship if you had to leave. I don't think there's any argument that the statute was put in place because the U.S. government really wants to favor people who have 20-year-olds. The purpose is to avoid causing a significant hardship to close family members of people who may be removed, and if the child is old enough that it no longer causes a hardship, then I don't see why that would fulfill what the statute is doing. I would just say I foresee many administrative issues with that, given, let's say that I established hardship to a 17-year-old, Your Honor, and the IJ reserves for a grant, it gets granted, DHS's appeals. While on appeal, my 17-year-old ages out, but I have now another 3-year-old. So then I'm forced to file another motion to remand and all the additional evidence and everything else like with that, I think because then it invites just the administrative state to continue to receive more and more motions to remand and motions to reopen and contribute to that backlog, I just see that only adding more and more years to the processing times, Your Honor. That may be, but I don't know that that's a reason to read the statute contrary to what it's saying. I agree, Your Honor, and I just would ask then that if the court does try to find that it's at the time that the IJ hears the application, if the court is not inclined to find any type of equitable tolling that would benefit Mr. Diaz. Thank you, Your Honors. All right. Thank you, counsel. Court is in recess until 9 o'clock tomorrow.